**Dewey LYDEN, et al., Plaintiffs,**

v.

**Joe D. HOWERTON, etc., et al., Defendants.**

Nos. 83-2682-Civ, 84-0154-Civ to 84-0156-Civ, 84-0237-Civ, 84-0239-Civ, 84-0241-Civ, 84-0244-Civ, 84-0246-Civ, 84-0897-Civ and 84-0898-Civ.

United States District Court, S.D. Florida.

Feb. 2, 1990.

Alfred K. Frigola, Frigola, DeVane & Wright, P.A., Marathon, Fla., for plaintiffs.

Robert Kendall, Jr., Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## FINAL ORDER GRANTING MOTION FOR ATTORNEY'S FEES

JAMES LAWRENCE KING, Chief Judge.

This cause comes before the court upon a motion opening the last chapter in the suit arising from the transportation of aliens into the United States during the Cuban Refugee Freedom Flotilla in 1980. After over six years of litigation before this court, the Eleventh Circuit, and the Immigration and Naturalization Service, the plaintiff timely moves for attorney's fees pursuant to Title 28, United States Code, § 2412(b) and/or § 2412(d).

### I. PROCEDURAL HISTORY

The plaintiffs in this consolidated action are boat owners and captains who participated in the Mariel boatlift from Cuba in the spring of 1980. After bringing Cuban refugees to this country without visas, in violation of 8 U.S.C. § 1323, the United States seized their boats, and the Immigration and Naturalization Service levied substantial fines. The boat captain and owner plaintiffs followed Immigration and Naturalization Service procedures, but obtained no relief. Thereafter, plaintiffs filed separate actions in this court for injunctive and declaratory relief so that they could recover their boats and prevent the United States from imposing fines upon them.

In those actions, this court found that the INS was estopped from enforcing 8 U.S.C. § 1323, that duress was a proper defense to actions under that section, and that plaintiffs had established duress as a matter of law. *See Lyden v. Howerton,* No. 84–0154–Civ–King (S.D.Fla. June 29, 1984). The INS then appealed to the United States Court of Appeals for the Eleventh Circuit. *Lyden v. Howerton,* 783 F.2d 1554 (11th Cir.1986). The Eleventh Circuit affirmed this court's determination that duress constitutes a defense to 8 U.S.C. § 1323, but concluded that this court's "factual findings were premature" and directed a remand from this district court to INS "for action consistent with [the Eleventh Circuit] opinion." *Id.* at 1556–57.

This court then entered an order of remand to INS "for individual evidentiary hearings for factual determinations under the correct legal principles." *Lyden v. Howerton,* No. 82–2682–Civ–King (consolidated) (S.D.Fla. May 15, 1986) (order on mandate). Subsequently, INS, in the various cases, either settled, concluded that it would impose no fine, or failed to afford an individual evidentiary hearing, as directed by this court. *Lyden v. Howerton,* No. 83–2682–Civ–King (consolidated) (S.D.Fla. March 31, 1989) (final judgment). This court entered an order of final judgment in these consolidated cases on March 31, 1989. *Id.*

Having carefully considered all the foregoing materials and argument, pertinent portions of the record, applicable law, and being otherwise fully advised with the substance, procedure, and nuances of this litigation, the court makes the following rulings.

## II. THE EQUAL ACCESS TO JUSTICE ACT ("EAJA")

### A. *Plaintiffs Were Prevailing Parties*

■ The first step to resolving any claim for attorney's fees under the EAJA is to determine if the plaintiffs were in fact prevailing parties. Our circuit employs the same test to determine whether an applicant for EAJA fees is a "prevailing party" as is used to resolving "prevailing party" eligibility for attorney's fees under 42 U.S.C. § 1988. *Jean v. Nelson,* 863 F.2d 759, 765 (11th Cir.1988).

Until recently, the prevailing party test was whether he or she has received substantially the relief requested or has been successful on the *central issue,* or, stated another way, whether plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation. *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985) (en banc) (emphasis added) (citations omitted).[1]

The Eleventh and Fifth Circuit Court of Appeals were the only two circuits requiring that a party succeed on the "central issue" in the litigation and achieve the "primary relief sought" to be eligible for an award of attorney's fees under § 1988. *See,* e.g., *Martin v. Heckler,* 773 F.2d 1145 (11th Cir.1985); *Simien v. San Antonio,* 809 F.2d 255 (5th Cir.1987). On the other hand, most federal courts have applied a less demanding standard, requiring only that a party succeed on a significant issue and receive some of the relief sought in the lawsuit. *See,* e.g., *Lampher v. Zagel,* 755 F.2d 99 (7th Cir.1985); *Nephew v. Aurora,* 766 F.2d 1464, 1466 (10th Cir.1985).

Recognizing this split among the circuits and the importance of the definition of the term "prevailing party" to the application of § 1988 and other federal fee-shifting statutes, the Supreme Court recently disagreed with and modified the Eleventh and Fifth Circuits' standard in favor of the following:

If the plaintiff has succeeded on "any significant issue in the litigation which achieved some of the benefit the parties sought in bringing the suit," the plaintiff has crossed the threshold to a fee award of some kind.... Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the

---

1. For an indication in the EAJA's legislative history that Congress intended to give the term "prevailing party" the same meaning it has in other fee-shifting statutes, *see* H.R.Rep. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S. Code Cong. & Admin.News 4953, 4984, 4990.

dispute which changes the legal relationship between itself and the defendant.... Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimus* a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied.... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*.

*Texas State Teachers' Assoc. v. Garland Indep. School Dist.*, ─── U.S. ───, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (emphasis in original, citations omitted).

With or without the benefit of this new and less stringent standard, the court easily finds plaintiffs to be "prevailing parties." Plaintiffs obtained the primary relief sought, succeeded on the central issue in the suit, namely establishing duress as a defense, and derived a great benefit by having their vessels released from seizure and the fines dropped.

### B. *28 U.S.C. § 2412(b)*

■ This portion of the EAJA provides that:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States.... The United States shall be liable to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

"This statute permits a court to make a discretionary award of attorney's fees in accordance with the longstanding common-law exceptions to the 'American Rule' that each party must bear its own costs. Thus, the United States is liable for attorney's fees in those instances where the 'bad

faith,' 'common fund,' and 'common benefit,' exceptions to the 'American Rule' would apply to any other civil litigant." *U.S. v. Certain Real Estate Property*, 838 F.2d 1558, 1565 (11th Cir.1988).

The "common benefit" exception to the "American Rule" is clearly applicable here. In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct.1943, 36 L.Ed.2d 702 (1973), the Supreme Court established the "common benefits" rationale for awarding fees when the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." Such "fee shifting" was found justified in those cases, not because of any "bad faith" of the defendant but, rather, because to "allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich others unjustly at the plaintiff's expense." The ascertainable class consists of all the boat owners and captains who participated in the Mariel Boatlift from Cuba in the spring of 1980. The plaintiffs in this consolidated action are clearly members of that class. The attorneys obtained a very successful result for the plaintiffs in these consolidated cases. The cases were ultimately resolved in favor of the boat captains and owners, with a waiver by the government of between $800,000 to $1 million in fines, with payment to the government of $3,500 on only two boats. This was a total victory for the plaintiffs after they established through litigation in these cases their right to defend against the government's fines and forfeitures. Not only was a substantial benefit conferred upon the plaintiffs in these cases, by the successful outcome of this litigation, but a substantial benefit was conferred upon all of the class of litigants in the Mariel Boatlift fine/forfeiture cases. This litigation established as a matter of law that estoppel is a defense and that the individual boat owners and captains had the absolute right to contest with defenses (i.e., duress, compulsion, etc.) the levying of administrative fines by the Immigration

and Naturalization Service. This was a very valuable benefit not only to the boat owners but to the public generally in that it resulted in the cessation of the filing of illegal administrative fines by the government. The benefit is much broader than just to these boat captains and owners in that the United States Attorney's Office thereafter ceased filing these fines and levying these fines based upon the principles of law established by this litigation and affirmed by the Eleventh Circuit. The establishment, as a matter of law, of the entitlement to raise a defense to an administrative fine is something that cannot be equated with mere dollars but is a very substantial benefit flowing from this series of cases.

Overall, this case has had great widespread effect as shown when thousands of boats were released from seizure and by the fact that many, if not most, of the approximately 1,000 boatlift cases submitted to the federal courts were remanded to the administrative agencies so that, consistent with the pronouncements of this and other courts, the defenses of duress and coercion could be appropriately considered by the agency. Within this context, the court finds that the plaintiffs are entitled to recover attorney's fees pursuant to 28 U.S.C. § 2412(b) because that section imposes liability for attorney's fees upon the United States in those instances where the common benefit exception to the American Rule would apply. Such benefit was certainly conferred here.

### C. *28 U.S.C. § 2412(d)(1)(A)*

This portion of the EAJA provides that:

A court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[2]

For this court to entertain a motion for attorney's fees under this section, the application must be filed within thirty days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). If so filed, there are three predicate findings to an award of EAJA fees and expenses: (1) the litigant opposing the United States must be a "prevailing party" (as previously determined, plaintiffs are prevailing parties); (2) the government's position must not have been substantially justified; and (3) there must be no circumstances that make an award against the government unjust. *Jean v. Nelson*, 863 F.2d 759 (11th Cir.1988).

1. The Application Was Timely Made

■ Within thirty days of this court's entry of "final judgment" on March 31, 1989, plaintiffs' attorney filed a motion for attorney fees. The INS objects to this motion on the ground that plaintiffs did not file it within the time prescribed in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B) (hereinafter EAJA). The INS argues, then, that either this court's decision in 1984, or its order to remand in 1986, or the administrative agency outcome constitutes a "final judgment" within the meaning of 28 U.S.C. § 2412(d)(1)(B), but that this court's captioned final judgment does not. The argument of the INS must fail.

The EAJA waives sovereign immunity, therefore the court must strictly construe it. *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1494 (11th Cir.1986). This court lacks jurisdiction only if the application for attorney fees was not filed within thirty days of final judgment. *Id.*

According to 28 U.S.C. § 2412(d)(2)(G), a "final judgment means a judgment that is final and not appealable and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). This court's decision of June 29, 1984, could not constitute a "final judgment." That judgment was appealable, and in fact was appealed to the Eleventh Circuit. In addition, this court's May 15, 1986, order of remand was not a final

---

**2.** The original EAJA expired in October 1, 1984. Congress reauthorized the statute in 1985 and made reenactment retroactive to the previous expiration date. Pub.L. No. 99–80, 99 Stat. 183, 186 (1985).

judgment. That order merely provided for further factual determinations to be made by INS. *See Papazian v. Bowen,* 856 F.2d 1455, 1456 (9th Cir.1988); *Finkelstein v. Bowen,* 869 F.2d 215 (3d Cir.1989).

The only real question for decision here is whether the factual determinations of the INS or this court's captioned final judgment order represents the final judgment in this case within the meaning of 28 U.S.C. § 2412(d)(1)(B). The EAJA provides little guidance. Rather, the question demands an examination of the EAJA's fee provisions in the context of this case and other decisions on the status of an action after remand from the district court.

a. *The Case Law and Its Application to This Case*

The United States Supreme Court recently interpreted the fee provisions of the EAJA in the context of a district court's remand to an agency. In *Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), Justice O'Connor wrote for a majority of the court when she advanced that attorney's fees were available for remand proceedings since the district court retained jurisdiction over remand. In coming to this conclusion, the Court decided that within the context of the Social Security Act, remand by the district court to an agency invoked continuing supervision by the court or the agency. Of course, the specific provisions of the Social Security Act governed the outcome of that case. *Id.* 109 S.Ct. at 2254. In addition, the Court made reference to situations where the district court specifically reserved jurisdiction over the action after remand. *Id.*

Another action under the Social Security Act in the Ninth Circuit similarly interpreted the term final judgment as it applied to remand. *Papazian v. Bowen,* 856 F.2d 1455 (9th Cir.1988). The *Papazian* court pointed to the parties' and the court's intent to retain jurisdiction. *Id.* at 1456. Moreover, the Ninth Circuit made a crucial observation about the relation between the nonfinality of a remand order and the district court's continuing jurisdiction over the

action: "Presumably, any dispute over the agency's determination on remand would have been presented to the district court and possibly to [the appeals court] on appeal." *Id.* In addition, the district court's entry of a final judgment order signaled that it did not consider previous proceedings to be final within the meaning of the EAJA. *Id.*

While this action does not fall under the stringent "provisions for judicial review of agency action," as outlined in the Social Security Act, *Sullivan,* 109 S.Ct. at 2254, it does bear striking resemblance to the above Social Security cases in other respects.

Here, as in *Sullivan* and *Papazian,* the district court and the parties intended that this court retain jurisdiction over the action while on remand to the agency. This court entered a final judgment order on plaintiffs' motion. *The United States did not oppose plaintiffs' motion for final judgment.* (The plaintiffs moved for entry of final judgment after remand on March 15, 1989. After lapse of the prescribed time period, this court entered final judgment in this case on March 31, 1989.) Thus, at the time that this court entered its final judgment order, this court, the plaintiffs, *and the defendant* were content to view that order as the true final judgment in the case. Thus, it is at least persuasive that this court in fact entered an unopposed final judgment order in this case. *See Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1145 (11th Cir.1986).

In addition, while this action did not arise out of legislation with the specific provisions for continuing jurisdiction evident in the Social Security Act, the court should implicitly arrive at the same result. This cause arose out of the prosecution of the general penalty provisions of U.S. Immigration law (8 U.S.C. § 1323), as well as the Declaratory Judgment Act, 28 U.S.C. § 2201, and the general equitable powers of this court to grant injunctive relief. No specific statutory provisions for agency review govern (as they do in the Social Secur-

ity Act, for example).[3] Common logic, however, dictates that plaintiffs' motion for final judgment signified an ongoing action before this court, not an appeal from an agency determination. Thus, by analogy, the *Sullivan* and *Papazian* cases apply here, although this case did not arise under the Social Security Act. Since by all other indications the action was ongoing, this court properly had continuing jurisdiction to render final judgment.

### b. *INS' Power to Assess Attorney's Fees*

In addition, the INS could not have properly adjudicated a claim for attorney's fees for actions not conducted before it. Under 5 U.S.C. § 504, an agency may award fees "incurred by that party in connection with that proceeding...." Section 504 makes no mention, however, of an agency determining fees and costs for an action that originated in federal district court, and then traveled to the court of appeals, back to the district court, and then to the agency.

### c. *Multiple Parties, Multiple Outcomes*

Most importantly, this court remanded a consolidated action. Not all claims were resolved at the same time by the INS. Rather, INS settled some, held factual hearings on others. In some cases, the INS did not hold hearings as directed by this court. In the context of multiple plaintiffs and different resolutions, this court had compelling reason to retain jurisdiction over the entire consolidated action. For instance, Federal Rule of Civil Procedure 54(b) describes the procedure to follow for entry of judgment where more than one claim for relief is presented or where multiple parties are involved in a particular case:

The court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is not just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and that order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). Thus, the rule strongly recommends that a district court retain discretion to enter final judgment as to all plaintiffs in one order. "The historic rule in the federal courts has always prohibited piecemeal disposal of litigation...." Fed.R.Civ.P. 54(b) advisory committee's note.

Finally, in a case nearly identical to this, Judge Aronovitz awarded attorney's fees in *Pollgreen v. Morris*, No. 80–1412–Civ–Aronovitz (S.D.Fla. May 25, 1989). There, Judge Aronovitz noted that "[t]he final judgment entered herein officially closed the case.... It is clear that plaintiff's Motion for Attorney's Fees is now properly before this court as the administrative process has come to an end and a final judgment has already been issued." *Pollgreen v. Morris*, No. 80–1412–Civ–Aronovitz at 6 (S.D.Fla. May 25, 1989).

In sum, plaintiffs' attorney is entitled to attorney's fees under the EAJA. His motion was timely as it was filed within thirty days of final judgment in this action. This court's captioned order of final judgment represents the final judgment required in

---

**3.** The general provisions of the Administrative Procedure Act (APA) reveal only that this court satisfied the dictates of that Act when it initially assumed jurisdiction. The APA provides that judicial review of agency action should lie, once administrative remedies are exhausted, with respect to whether the agency's findings and conclusions were arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law. 5 U.S.C. § 704. Here, plaintiffs instituted a sep-arate action in federal district court seeking declaratory and injunctive relief, after exhausting INS remedies and satisfying the APA, found themselves back at INS after remand, and then sought entry of final judgment with this court. This court correctly assumed jurisdiction in the initial action in accord with APA-provided judicial review. If this court did retain jurisdiction, then the APA need not be satisfied again after remand.

the EAJA for several reasons: one, plaintiffs moved for final judgment and defendant did not object to that motion as improper in any way; two, this court did enter final judgment; three, the court and the parties intended that this court retain jurisdiction over the action while it was on remand to INS; four; the INS could not properly have awarded attorney's fees for proceedings not conducted before it; and, five, this case involved multiple parties and multiple claims—a consolidated action— which could not be properly brought to final judgment without a consolidated order of the court where the consolidated proceeding originated.

### 2. The Government Lacked Substantial Justification

■ The EAJA provides for the recovery of attorney's fees by a successful litigant against the United States unless the government demonstrates that its position throughout the litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court has held that the standard determining "substantial justification" is one of reasonableness. *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The standard used in this circuit is also one of reasonableness. *U.S. v. Certain Real Estate Property*, 838 F.2d 1558, 1561 (11th Cir.1988). The government has the burden of proving that they were substantially justified in both law and fact at each stage of this matter. *Id.; Stratton v. Bowen*, 827 F.2d 1447, 1449–50 (11th Cir.1987).

Determining substantial justification turns not only upon the law, but also upon what the evidence adduced by the court reveals about the facts. *Jean v. Nelson*, 863 F.2d 759, 767 (11th Cir.1988) (citing *Pierce v. Underwood*). Oftentimes, as here, the published record of the case does not reveal the full aura and nuances of the litigation. Although the court finds that the public record justifies finding the government without substantial justification in both law and fact, the history, procedure, and the historical context, specifically within this court's knowledge, buttresses this conclusion.

The record establishes that the government has not carried its burden. Adhering to the Supreme Court's admonition that requests for attorney's fees should not result in a second major litigation, *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), the court will not again analyze and pass upon the litany of legal arguments presented by both parties in the underlying litigation. Suffice it to say that the government proceeded through each stage of this lawsuit without recognition that at the outset plaintiffs' actions were implicitly authorized and/or precipitated by President Carter's directives and the advice given by the government to many vessels leaving the United States or already in or near Cuba. *See Lyden v. Howerton*, No. 83–2682–Civ– King (consolidated) (S.D.Fla., June 28, 1984) (memorandum of law containing findings of fact and conclusions of law). The defendants were not justified when they denied plaintiffs a prompt post-seizure hearing, nor was there substantial justification for denying plaintiffs access to any forum, other than this court, to contest the seizure of their vessels. Subsequently, the government also failed to recognize until the final stage of the suit that the defense of duress was viable or at least provided a basis for mitigation of the fines. This delay cannot be viewed as justified.

It is obvious that the term "substantially justified" does not mean that the government need have acted in an arbitrary, capricious manner or to have abused discretion to be subject to an award of fees. However, it is apparent that the agency's findings and conclusions in the various administrative proceedings were arbitrary, capricious, and constituted an abuse of discretion and were not rendered in accordance with law. The very record before the board of immigration appeals and/or the agency in each instance, clearly supported the applicability of the defense of duress and coercion directly or through mitigation of fines as a matter of law. The failure to apply same in accordance with clear standards/regulations and/or statutory law was arbitrary, capricious, not in accordance

with law, and an abuse of discretion rising to the level supporting relief sought herein.

### 3. An Award of Attorneys' Fees is Not Unjust

■ The court finds no circumstances that would make an award of attorney's fees in this matter unjust. Quite to the contrary, the plaintiffs were virtually impoverished by the actions of the government; thus, they were unable to pay an adequate fee to their counsel. Clearly within the intent of Congress in enacting the EAJA was an effort to equalize the position of the average citizen against the United States.

Defendants contend that an award would be unjust for several reasons. Defendants' first reason is that the underlying controversy was extraordinary. That is undisputed. However, it does not justify the subsequent actions of the defendants including denial of due process procedures regarding seizure of the vessels and refusal, for at least four years, to abide by this court's determination on duress. Defendants' second reason is that the government had a substantial interest in enforcing the nation's immigration laws during the Cuban flotilla. Again, that is undisputed but, again, it does not justify the unlawful manner in which seizure and fine proceedings were conducted. A need to enforce immigration laws did not give the defendants a right to be violative of law. This court has neither the willingness nor the competence to interject itself into the arena of immigration policy, except insofar as such policy runs afoul of constitutional and statutory safeguards, as is the case here. Defendants' third reason is that an award of fees would be unjust because plaintiffs have not claimed that they received no compensation for their transportation of Cubans. The plaintiffs claim that they did not profit by their transportation of Cubans; however, even if they had, the issue would be irrelevant. This action was filed solely due to defendants' refusal to comply with the due process procedures outlined by the appropriate statute. This action was pending for more than five years due to delays caused by defendants and defendants' refusal to consider plaintiffs' defenses.

Overall, this case, as mentioned before, has had great widespread effect as shown when thousands of boats were released from seizure and by the fact that many, if not most, of the approximately 1,000 boatlift cases submitted to the federal courts were remanded to the administrative agencies so that, consistent with the pronouncements of this and other courts, the defenses of duress and coercion could be appropriately considered by the agency. Within this context, the court views no circumstance supporting a finding that an award of attorney's fees would be unjust.

Plaintiffs are entitled to recover attorney's fees pursuant to 28 U.S.C. § 2412(d), because their application was timely made, they are "prevailing parties," the government's position was not substantially justified, and there exists no circumstances that would make such an award unjust.

## III. REASONABLE ATTORNEY'S FEES

Having concluded that plaintiffs are entitled to an EAJA award, the amount of such an award remains for determination. Under 28 U.S.C. § 2412(b), the court has the discretion to award whatever fee is reasonable and appropriate that the court determines to be proper. On the other hand, under 28 U.S.C. § 2412(d), the court must explain any deviation it makes from the $75 per hour award specified therein. Under § 2412(d), "attorney's fees shall not be awarded in excess of $75 unless the court determines that an increase in the cost of living, or some special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The court will first determine the amount of the reasonable attorney's fee under § 2412(b). Next, the court will explain and justify its deviation from the $75 per hour award suggested in § 2412(d).

In recent years, the Supreme Court has five times considered the myriad of issues which necessarily flow from attempts to determine the amount of attorney's fees to

be awarded to a prevailing plaintiff.[4] The Eleventh Circuit has mirrored the evolving standards of the Supreme Court and has recently refined their framework for calculating attorney's fees in light of the various Supreme Court rulings. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir.1988) (hereafter "Norman").

The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended during the litigation multiplied by a reasonable hourly rate. *Norman,* 836 F.2d at 1299 (citing *Hensley v. Eberhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The figure derived from this calculation is commonly referred to as the "lodestar."[5]

## A. Reasonable Hourly Rate

█ Reasonable fees are to be calculated according to the prevailing market rates in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Norman,* 836 F.2d at 1299 (citations omitted). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates by providing evidence, the least of which must be more than the affidavit of the attorney performing the work. *Id.* Invariably, and as a predictable result of our adversarial process, the court will be faced with a high-end range (supplied by the prevailing plaintiff) and a low-end range (sup-

plied by the opposing defendant). *Id.* The court must then determine the appropriate amount of the case at hand.

Plaintiffs' attorney, Mr. Alfred Frigola, has presented sufficient evidence to meet the requirement of *Norman* to initiate the court's inquiry into a reasonable hourly rate. Mr. Frigola represented plaintiffs through all phases of the suit. Plaintiffs' witnesses at the hearing in this matter were plaintiffs' attorney and Ms. Diane Tolbert Covan, who was qualified as an expert in this case in this type of matter. In fact, plaintiffs' attorney, himself, has been acknowledged to be an expert in immigration law by the government and has qualified as an expert witness to testify as to reasonable attorney's fees for Mariel cases in the federal district court for the Southern District of Florida. Plaintiffs' attorney testified that $250 to $300 per hour is a reasonable amount for him to be paid in this case.

Ms. Covan testified that $200 to $250 per hour is, in her opinion, the range of reasonable hourly rates in the South Florida community for similar services by lawyers of reasonably comparable skills, experience, and reputation in 1989.[6] She also testified that she is familiar with this case, has had personal involvement with similar cases in which she charges and has paid fees, she has knowledge of fees paid to other attorneys, and knowledge of the skills, experience, and reputation of the plaintiffs' attor-

**4.** *Pennsylvania v. Delaware Valley Citizens Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); and *Hensley v. Eberhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**5.** In arriving at the "lodestar," this court may consider a variety of factors. *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), suggests twelve: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skills required to perform the legal work properly; (4) preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed

or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved in results obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

Many of these factors, however, "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eberhart,* 461 U.S. at 434, n. 9, 103 S.Ct. at 1940, n. 9 (citation omitted). Notwithstanding this observation, some of these factors may be utilized in the court's determination. *Norman,* 836 F.2d at 1299–1300.

**6.** The court notes that Ms. Covan's affidavit, filed before the hearing, stated that $200 was reasonable.

ney. During their testimony, plaintiffs' attorney and Ms. Covan testified that all twelve factors, found to be crucial considerations regarding hourly rates in *Johnson*, 488 F.2d 714 (5th Cir.1974), were taken into consideration in arriving at their opinion.

The defendants did not present testimony regarding a reasonable hourly rate under the § 2412(b) claim for attorney's fees, thus depriving the court of the usual "floor" figure upon which to measure the variance. Accordingly, for the purpose of the 28 U.S.C. § 2412(b) claim, the court finds Mr. Frigola entitled to an hourly rate of $200 per hour.

With respect to the § 2412(d) claim, the defendants' pleadings make a pure statutory argument wherein they oppose an award of attorney's fees in excess of $75 per hour, the statutorily defined rate. The EAJA statute provides in relevant part:

> Attorney's fees shall not be awarded in excess of $75 unless the court determines that an increase in the cost of living or some special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). The defendants argue that plaintiffs have identified no "special factors" or other justification entitling them to recover in excess of $75 per hour. Nothing could be further from the truth.

The court is somewhat constrained by the Supreme Court's directive in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), that "broad and general" factors including the novelty and difficulty of the issues, the case's undesirability, the expertise of counsel, and the results obtained are not to be considered "special factors" within the meaning of the statute. *Id.* 108 S.Ct. at 2554. Notwithstanding the Supreme Court's limitation,

and being fully respective thereof, the court finds a number of "special factors" which warrant exceeding the statutory base of $75. In addition to the "special factors" found in the EAJA statute itself, § 2412(d)(2)(A), an unusual delay in the award of fees has also been considered a "special factor." *See Wickett v. ICC*, 857 F.2d 793, 794 (D.C.Cir.1988) (Edwards, J., concurring in denial of rehearing *en banc*) (plaintiffs' attorneys worked on case for eight years before receiving fees under EAJA). (The importance of the delay factor is seemingly reinforced by the Supreme Court's decision in *Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 2468–69, 105 L.Ed.2d 229 (1989), affirming an enhancement of fees for delay under § 1988.) The initial lawsuit, *Lyden v. Howerton*, 731 F.Supp. 1545 (S.D.Fla.1983), was filed over six years ago. It is clear that there has been an increase in the cost of living since this time. There was direct testimonial evidence stating that there was a shortage of lawyers possessing the specialized skill of immigration law needed for this litigation at the time this suit was filed. The court in *Jean v. Nelson*, 863 F.2d 759, 774 (11th Cir.1989), suggests that a special expertise in immigration law might qualify as a "special factor" under the EAJA. In addition, the benefit derived not only for the plaintiffs herein, but a class of people, including over 1,000 vessel owners and captains, warrants this increase. Moreover, evaluating this issue on a case-by-case basis, the exceptional and unusual circumstances present here fit clearly within the flexibility allowed by the statute and espoused in *Pierce* to exceed the statutory base. Accordingly, the court finds Mr. Frigola, under the 28 U.S.C. § 2412(d) claim, entitled to an hourly rate of $200 per hour.[7]

Therefore, regardless of whether attorney's fees are awarded under 28 U.S.C.

---

7. The exceptional and unusual circumstances of this case includes the extreme delay by the government in proceeding with and finally disposing of this suit. This delay affords the court the opportunity to substantially increase the amount of the fee award. This may be accomplished either by increasing the EAJA fee by the cost of living, 28 U.S.C. § 2412(d)(2)(A), or by

adjusting the "lodestar" upwards to take into account the time value of the money and the effects of inflation. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir.1988). This authority provides an independent basis to support the increase in the EAJA fee provided herein.

§ 2412(b) or § 2412(d), the hourly rate used in the "lodestar" calculation is $200 per hour.

### B. *Hours Reasonably Expended*

The next step in the computation of the lodestar is the ascertainment of reasonable hours. Plaintiffs presented well-documented time sheets and other relevant evidence claiming 1,082.3 hours expended over the course of the litigation. Moreover, plaintiff submits, and expert testimony supports the position, that 1,082.3 hours in a case of this type, complexity, and duration was extremely reasonable. The court agrees. In fact, the number of hours claimed by plaintiffs' attorney is less than that found in a very similar set of cases. *See Pollgreen v. Morris*, 80–1412–Civ–Aronovitz (U.S.D.C.SD Fla.) (judgment awarding attorney's fees). The record, expert testimony, and Mr. Frigola's time sheets are clear that he expended far more hours but that due to the exercise of billing judgment and other factors, he has not sought reimbursement for all hours expended. In addition, the court does not find any of the documented hours submitted to qualify as redundant or unnecessary time.

The defendants did not present any evidence at the hearing to contradict or oppose the number of hours claimed. However, at the hearing and within their pleadings, the defendants argue that plaintiffs are not entitled to recover attorney's fees related to proceedings at the administrative level in this case. The hours so claimed are appropriate and do not require exclusion. *See Hudson v. Secretary*, 839 F.2d 1453 (11th Cir.), *rehearing denied*, 849 F.2d 1480 (11th Cir.), *cert. granted*, — U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988); *Reeves v. Bowen*, 860 F.2d 1009 (11th Cir. 1988).

Accordingly, the court finds 1,082.3 hours reasonable and appropriate.

### C. *The Lodestar Calculation and Adjustments Thereto*

The lodestar figure consists of the product of the attorney's prevailing market fee times his compensable hours. Here, $200 times 1,082.3 hours is equal to $216,-460.00. The court finds no circumstances present warranting an adjustment of the lodestar figure as permitted in *Norman*.[8]

## IV. CONCLUSION AND JUDGMENT

It is hereby ORDERED AND ADJUDGED that a judgment be entered pursuant to the EAJA and against the United States and in favor of plaintiffs in the amount of $216,460.00 to be paid forthwith to Mr. Alfred K. Frigola, Esquire, as compensation for 1,082.3 hours expended during the course of this litigation.

DONE AND ORDERED.

---

**8.** This finding accepts the authority of this court to increase the lodestar figure for the time value of money and the effects of inflation. *See supra* n. 7.