Richard **BRULAND**, Raymond Bruland, Vance Hager and William Baldwin, Plaintiffs,

v.

Joe D. **HOWERTON**, etc., et al., Defendants.

No. 84–0240–Civ.

United States District Court, S.D. Florida.

July 3, 1990.

Alfred K. Frigola, Marathon, Fla., for plaintiffs.

Robert A. Rosenberg, Asst. U.S. Atty., Robert Kendall, Jr., Office of Immigration Litigation, Civ. Div., Washington, D.C., Lead Counsel, for defendants.

## FINAL ORDER GRANTING MOTION FOR ATTORNEYS FEES

NESBITT, District Judge.

This cause comes before the Court upon Plaintiffs' Motion for Attorney's Fees, pursuant to 28 U.S.C. § 2412(a)–(b) and 2412(d) ("Equal Access to Justice Act"). After due consideration, it is hereby ORDERED and ADJUDGED that Plaintiff's Motion for Attorney's Fees is GRANTED in PART.

## PROCEDURAL HISTORY

The facts underlying this case are described in detail in this Court's Order of March 27, 1985 and in the Eleventh Circuit Court of Appeals' decision in the consolidated appeals of *Lyden v. Howerton* and *Bruland v. Howerton,* 783 F.2d 1554 (11th Cir.1986). In summary, the extended history of the case is as follows: Plaintiffs were boat owners or captains who participated in the Spring, 1980 Mariel boatlift which brought more than 100,000 Cubans to the United States. The Immigration and Naturalization Service ("INS"), after conducting administrative proceedings, found that Plaintiffs brought to the United States Cuban refugees without visas. Rejecting the argument that duress can be a defense to this charge, the INS constructively seized their boats and imposed substantial fines pursuant to 8 U.S.C. § 1323, which provides that a person may be fined $1000 for each alien brought to the United States without a visa.

Plaintiffs sued in this Court to challenge both the fines and the seizure of the boats. After an appeal from this Court's Findings of Fact and Conclusions of Law, the Court of Appeals held that, in accordance with the settled law of this Circuit, duress was available as a defense to violations of 8 U.S.C. § 1323. *Id.* at 1557. The Court ordered that this case be remanded for further proceedings before the INS, specifically for individualized findings on the applicability of the duress defense in the individual cases. *Id.*

On May 5, 1986, this Court entered orders of remand in these consolidated cases to the INS, pursuant to the Eleventh Circuit's mandate. On remand, the INS held a composite hearing and, in December, 1986, issued general Findings of Fact and Conclusions of Law to be applied in subsequent individualized hearings. However, despite the repeated admonition of the Court of Appeals that the INS expedite its proceedings and hold them without delay, *see Lyden v. Howerton,* 783 F.2d at 1559, the last in the series of "Final Administrative Decisions" reducing or eliminating previously imposed fines was not issued until February, 1988, nearly two years after this Court's remand. As to at least two of these Final Decisions, Plaintiff filed a Notice of Appeal to the Board of Immigration Appeals. In these Notices of Appeal, Plaintiff indicated that he intended neither to request oral argument nor to submit a separate brief. Apparently, the INS never took any action in response to these notices.

On June 7, 1989, this Court, having retained jurisdiction over this case, granted Plaintiffs' *unopposed* motion for entry of a final judgment. In its Final Judgment, which was entered on June 12, 1989, the Court explicitly retained jurisdiction to award attorney's fees. On July 10, 1989, less than 30 days after the entry of Final Judgment, Plaintiffs filed their motion for attorneys fees.[1]

---

1. On December 16, 1987, the Court entered a "consent order of dismissal" in a case involving

two of the Plaintiffs in this action against the United States. This Order, which provided that

## DISCUSSION

### A. ENTITLEMENT TO FEES

The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) including proceedings for judicial review of agency action ... unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1990 Supp.).[2] A different section of the act gives a court discretion to award fees to the extent that a private party would be liable under common law or statute. 28 U.S.C. § 2412(b) (1990 Supp.). The Court finds that Plaintiffs are entitled to fees under § 2412(d), the mandatory fee provision of the EAJA.

Under § 2412(d)(1)(B), in order to recover fees in a proceeding against the United States, a plaintiff must apply for fees within thirty days of final judgment in the action. In addition, several other requirements must be met: the plaintiff must be a "prevailing party," the position of the United States must not have been "substantially justified," and there must not be circumstances rendering an award of fees "unjust." *Commissioner, Immigration and Naturalization Service v. Jean*, — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

#### 1. *Timeliness*

The United States opposes the award of attorneys fees on several grounds. The United States first urges as a threshold matter that the application is untimely and therefore that this Court does not have jurisdiction to entertain the motion for attorneys fees filed on July 10, 1989. The government argues that the application is untimely because of Plaintiffs' failure to file it either within thirty days of remand (May 5, 1986) or within thirty days of the final administrative determination (February 17, 1988).[3]

The Court has jurisdiction to award attorney's fees in this case. Under 28 U.S.C. § 2412(d)(1)(B), a party seeking attorney's fees must submit an application of fees within 30 days of "final judgment in the action." Section 2412(d)(2)(G) defines "final judgment" as "a judgment that is final and not appealable." The Eleventh Circuit has interpreted this provision to mean "the date on which a party's case has met its final demise, [such] that there is nothing further the party can do to give it life." *Martindale v. Sullivan*, 890 F.2d 410, 413 n. 5 (11th Cir.1989) (quoting *James v. United States Dep't of Housing and Urban Dev.*, 783 F.2d 997, 999 (11th Cir. 1986)).

Interpreting this definition, the Eleventh Circuit has held that a court order remanding a case to an administrative agency for further administrative proceedings is an interlocutory order and not a final judgment. *Taylor v. Heckler*, 778 F.2d 674, 677–78 (11th Cir.1985). In *Martindale*, the court, while reaffirming this general principle, held that an order styled as a "remand" is a final judgment if the administrative agency has no authority to conduct further administrative proceedings but is ordered merely to perform the ministerial function of executing the judgment. *Martindale*, 890 F.2d at 412–13.

The general rule of *Taylor* applies in this case. In its opinion on March 12, 1986, the Court of Appeals directed this Court to remand the case back to the INS in order

---

each party would "bear its own costs and attorneys fees," bore another case number (85–1494–Civ–Nesbitt) and is unrelated to the motion now before this Court.

**2.** The original EAJA expired on October 1, 1984. In 1985, Congress reauthorized the statute and made reenactment retroactive to the previous expiration date. Pub.L. No. 99–80, 99 Stat. 183, 186 (1985).

**3.** In its opposition to the application for attorney's fees, the government states that the final administrative decision was rendered in December, 1986, 2½ years prior to the July, 1989 application for attorney's fees. However, the date of the last of the District Director's Final Administrative Decisions is February 17, 1988.

to make *factual findings. Lyden v. Howerton*, 783 F.2d 1554, 1559 (11th Cir.1986). The Court of Appeals itself referred to the INS' role upon remand as the conductor of "proceedings." *Id.* ("[T]he proceedings before the agency should be held without delay."). Because the remand of the Court of Appeals and this Court required further proceedings to be held, the Court's Order of May 5, 1986 was an interlocutory order and not a final judgment.

■ The government's other contention is that Plaintiffs should have sought attorney's fees within 30 days of the date of the "final" administrative decision. The government is apparently arguing that the case died at the agency level, and nothing could be done to "give it life." [4]

The February 17, 1988 administrative decision should not be considered a "Final Judgment" for three reasons. First, the government did not oppose Plaintiffs' motion for entry of Final Judgment. At that time, then, the government did not believe that the entry of a Final Judgment was unnecessary or inappropriate. Second, this case did not terminate at the administrative level, because this matter had already reached the federal courts and had been remanded back to the agency. The District Court thus implicitly retained jurisdiction to insure that its remand was carried out and that the agency proceedings were not unreasonably delayed. *See Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248, 2255, 104 L.Ed.2d 941 (court retains jurisdiction, within meaning of Equal Access to Justice Act, over action remanded to Social Security Administration); *see also* 5 U.S.C. § 706 (court may compel agency action unreasonably delayed and set aside arbitrary or capricious agency findings). Buttressing this view is the fact that the remand required several different administrative decisions to be made. In this context, the Court had every reason to retain jurisdiction over the action as a whole rather than allow it to be disposed of in piecemeal fashion. *See Lyden v. Howerton,* 731

F.Supp. 1545 (S.D.Fla.1990) (order granting attorney's fees); *cf.* Fed.R.Civ.P. 54(b) (in absence of court's entry of final judgment as to fewer than all of claims presented, an order adjudicating fewer than all rights and liabilities is subject to revision at any time before entry of judgment).

Finally, Plaintiffs filed an administrative appeal of at least some of the District Director's decisions. In this appeal, Plaintiffs waived oral argument and indicated that they would not file a separate brief. The government never responded, and the Board of Immigration Appeals never acted upon the appeal. It would be a peculiar result if Plaintiffs were penalized because of the government's own inaction.

### 2. *Prevailing Parties*

■ The government₎ does not dispute that Plaintiffs qualify as "prevailing parties." Plaintiffs achieved their primary goals in that the vessels were released from seizure, they established that duress can be a defense, and their fines were either cancelled or substantially reduced. The Court therefore finds that Plaintiffs have satisfied the "prevailing party" requirement. *See Jean v. Nelson,* 863 F.2d at 765–66. *Cf. Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (under 42 U.S.C. § 1988, party is "prevailing" if he proves his entitlement to some relief on the merits of his claims).

### 3. *Substantial Justification*

"Substantial justification" is determined by a standard of "reasonableness." *Jean v. Nelson,* 863 F.2d 759 (11th Cir.1988), *aff'd, Commissioner, Immigration and Naturalization Service v. Jean,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The government's position must be justified to a degree that could satisfy a reasonable person. *Commissioner, I.N.S., supra,* at 110 S.Ct. at 2319 n. 6; *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). In other words, it must have a reasonable basis in

---

**4.** In the related case of *Lyden v. Howerton,* the district court rejected this argument and held that Plaintiffs' application for fees was timely.

*See Lyden v. Howerton,* 731 F.Supp. 1545 (S.D. Fla.1990) (order granting motion for attorney's fees).

both law and fact. *Id.* Several factors may be of assistance in the reasonableness inquiry: the state at which the litigation was resolved, views expressed by other courts, the legal merits of the government's position, the clarity of governing law, the foreseeable length and complexity of the litigation, and the consistency of the government's position. *Jean v. Nelson,* 863 F.2d at 767.

■ In determining whether the position of the United States was substantially justified, the Court must take into account not only the litigating position of the United States but also the action or failure to act by the agency upon which the civil action is based. 28 U.S.C. § 2412(d)(2)(D); *Commissioner, I.N.S., supra; United States v. Certain Real Estate Property,* 838 F.2d 1558, 1562 (11th Cir.1988); *Stratton v. Bowen,* 827 F.2d 1447, 1449 n. 2 (11th Cir. 1987).[5] The burden is on the government to prove substantial justification. *Id.*

After consideration of the entire record in this case, including the actions of the INS resulting in the filing of this action, the litigating position of the government both before this Court and the Court of Appeals, and the actions of the INS after remand, the Court concludes that the position of the United States was not "substantially justified."

The underlying actions of the INS were not substantially justified. Specifically, its unreasonable conduct during the initial administrative phase of this proceeding left Plaintiffs with no choice other than to bring this action in order to challenge the constructive seizure of their vessels and the substantial fines imposed. *See Pollgreen v. Morris,* No. 80–1412 (S.D.Fla.1989) (judgment awarding attorney's fees). Further, its actions on remand were also unreasonable. Significant to this determination is the fact that, even after the Court of Appeals explicitly instructed Defendants to hold its hearings as expeditiously as possible, the last of the "Final Administrative Decisions" reducing the levied fines was not issued until February, 1988. For nearly two years after this case was remanded to the INS, the original fines imposed on certain of the Plaintiffs remained in place. In light of the clear directions from the Court of Appeals, this Court cannot view such conduct as reasonable.

■ The parties dispute whether the government's litigating position before this Court was reasonable. Though the Court agrees with Plaintiffs that the government's litigating position was not substantially justified,[6] the Court need not address this issue. The 1985 amendment to § 2412(d) directs a court to determine whether the government's position was substantially justified, and its "position" includes the action by the agency upon which the civil action is based. 28 U.S.C.

**5.** Defendants therefore incorrectly recite the law when they state in their memorandum that "the questions presented by plaintiffs' motion for attorneys fees do not involve the reasonability of or justification for the actions taken by defendants to enforce the provisions of 8 U.S.C. § 1323." Both the plain language of the amendments to the EAJA and cases interpreting it make clear that the court must take into account the underlying administrative decisions of the INS which led to the filing of this action.

**6.** The position that Plaintiff contends is not "substantially justified" is the view that duress was unavailable as a matter of law. At the time the administrative proceedings were conducted, there was no Eleventh Circuit opinion holding that duress was available as a matter of law. Plaintiff correctly points out that there were district court opinions holding this view. *See United States v. Sanchez,* 520 F.Supp. 1038 (S.D. Fla.1981); *Pollgreen v. Morris,* 496 F.Supp. 1042,

1055 (S.D.Fla.1980). In the Court's view, the existence of these opinions does not alone render unreasonable the government's interpretation of 8 U.S.C. § 1323 at the time the suit was before this Court. *See Jean v. Nelson,* 863 F.2d at 768–69 ("It will seldom be the case ... two district court decisions—even if they appear in the same district in which the relevant case is being litigated"—will be dispositive of the reasonableness issue). Strongly impacting on the reasonableness of the government's position, however, is the fact that in 1983, the year before the case was filed in this Court, one of these two decisions was affirmed without opinion by the Eleventh Circuit. *See United States v. Sanchez,* 703 F.2d 580 (11th Cir.1983). Thus, in addition to holding that the initial actions of the agency were unreasonable, the Court also concludes that the government's position that duress is unavailable as a defense was not "substantially justified."

§ 2412(d)(2)(D); *Commissioner, I.N.S., supra.* In addition, the Supreme Court has recently made it clear that a court should make only one determination of justification. *See id.* ("[O]nly one threshold determination for the entire civil action is to be made."); *see also id.* at, 110 S.Ct. 2319 n. 7 ("Congress' emphasis on the underlying Government action supports a single evaluation of past conduct.").

■■■ Based on the record, the Court has concluded that the position of the United States was not substantially justified, and this lack of substantial justification cannot be rectified by a later reasonable litigation position. *See id.* at, 110 S.Ct. 2319 n. 7 ("[T]he Congressional intent is to provide for attorney's fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid such liability by reasonable behavior during the litigation") (quoting H.R.Rep. No. 98–992, pp. 9, 13 (1984)); *see also Hudson v. Secretary of Health and Human Services,* 839 F.2d 1453, 1456 n. 3 (11th Cir.1988) (for government's position to have been substantially justified, *all* of its positions must have been reasonable), *aff'd, Sullivan v. Hudson,* — U.S. —, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *McDonald v. Secretary of Health and Human Services,* 884 F.2d 1468, 1476 (1st Cir.1989) (though many of government's litigating positions were reasonable, award of EAJA fees proper where underlying agency action was not substantially justified); *Andrew v. Bowen,* 837 F.2d 875, 880 (9th Cir.1988) (granting EAJA fees without reaching question of substantial justification of agency's litigating position); *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1500 (11th Cir.), *vacated in part on other grounds,* 804 F.2d 1573 (11th Cir.1986). The Court therefore finds meritless the government's contention that the Court must examine the reasonableness of the government's litigating position regarding each phase of the litigation.

### 4. *Unusual Circumstances*

A party is not entitled to an award of attorney's fees under the EAJA if there are special circumstances that make an award against the government unjust. 28 U.S.C. § 2412(d)(1)(A); *Jean v. Nelson,* 863 F.2d at 765.

The government argues that there exist special circumstances in this case. It cannot be disputed that the flotilla was part of an extraordinary series of events unlikely to reoccur. This fact alone, however, does not make an award against the government unjust. Further, whether the Plaintiffs claim that they received no compensation for their efforts is irrelevant to this determination. *See Pollgreen v. Morris,* 80–1412 (S.D.Fla. May 25, 1989) (judgment awarding attorney's fees). Given the humanitarian nature of Plaintiffs' efforts and the conflicting pronouncements of the United States, the government is in no position to argue that the special circumstances of this case render an award of attorney's fees unjust.

### B. AMOUNT OF FEES

■■ The Supreme Court has recently indicated that when a litigant has met the conditions for eligibility for EAJA fees, the "task of determining what fee is reasonable is essentially the same as that described in *Hensley.*" *Commissioner, Immigration and Naturalization Service v. Jean,* — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983)). The starting point for determining the amount of reasonable fees is the number of hours reasonably expended during the litigation multiplied by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir.1988) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)).

### 1. *Reasonable Hourly Rate*

Normally, the Court arrives at a reasonable hourly rate by referring to the factors set out in *Johnson v. Georgia Highway*

*Express,* 488 F.2d 714 (5th Cir.1974).[7] However, under the EAJA, a court's starting point must be "the 'prevailing market rates' for services of like quality and kind." *Jean v. Nelson,* 863 F.2d at 773. *See also Norman,* 836 F.2d at 1299. The movant bears the burden of producing satisfactory evidence that the requested rate is consistent with prevailing market rates.

■■ Here, the prevailing market rate certainly exceeds $75 per hour. Under the EAJA, however, a fee in excess of $75 per hour cannot be awarded unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A). Broad and general factors, such as the difficulty of the issues, the case's undesirability, the expertise of counsel, and the results obtained are not to be considered special factors. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). *See also Jean v. Nelson,* 863 F.2d at 774–75.

The Court finds that there are no special factors, as defined in *Pierce* and *Jean,* entitling Plaintiff to an upward adjustment. However, Plaintiff's attorney is being compensated in the year 1990. The rate to be applied should reflect the increase in the cost of living between 1980, the year the EAJA was enacted, and the ultimate disposition of the case. Accordingly, the Court

has adjusted the rate from $75 per hour to $102 per hour in order to reflect the 36.13% increase in the cost of living during the relevant period of time. *See id.* at 773 (directing district courts to describe mathematically the basis of all cost of living adjustments under the EAJA).[8]

### 2. *Hours Reasonably Expended*

The next step is the determination of reasonable hours. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee, and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in his lawsuit. *Hensley v. Eckerhart,* 103 S.Ct. at 1940. Rather, "[t]he result is what matters." *Id.* However, it is well settled that "excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed." *Id.* at 1939–40. This concept is frequently referred to as the "billing judgment" rule, suggesting that lawyers should not be compensated for hours spent on activities for which they would not bill a client. "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" *Norman* at 1301 (emphasis in original).

---

**7.** The court in *Johnson* suggests twelve factors: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill required to perform the legal work properly; (4) preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

Many of these factors, however, "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940, n. 9 (citation omitted). Notwithstanding this observation, some of these factors may be utilized in the court's determination. *Norman,* 836 F.2d at 1299–1300.

**8.** The cost-of-living increase figure is based on the Consumer Price Index compiled by the United States Bureau of Labor Statistics. *See United States v. Willens,* 731 F.Supp. 1579, 1581 (S.D. Fla.1990). The Court's own calculations result in a different figure than that applied in *Willens. See id.* at Appendix I (applying 50% increase factor for 1989 and 1990).

In *Willens,* the court determined the cost-of-living increase factor by comparing the cost of living in 1980 to figures in each of the years that the attorney's services were rendered. This Court, however, finds it appropriate to utilize a single cost-of-living factor to account for inflation occurring between 1980 and the time of the ultimate disposition of the attorneys' fees issue. Courts in other circuits have utilized this method. *See, e.g., Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 708 (2nd Cir. 1987) (awarding fee of $88/hour); *Allen v. Bowen,* 821 F.2d 963, 968 (3rd Cir.1987) (awarding fee of $87.35/hour).

■ In this case, Plaintiffs achieved almost all their objectives. Through litigation they extablished that duress can be a defense, their fines were either cancelled entirely or substantially reduced, and they had their vessels released from seizure. Without filing an action in this Court, they could not have challenged the initial agency decision to fine them, and by their appeal to the Eleventh Circuit they succeeded in having vacated this Court's conclusion that, under the facts of the case, duress was unavailable as a matter of law. *See Lyden v. Howerton,* 783 F.2d 1554, 1557 (11th Cir.1986). In addition, after a review of the affidavits submitted by Plaintiff's counsel, and in light of the uniqueness and complexity of this case, the Court finds that there are no claimed hours which are unreasonable under the billing judgment rule. Plaintiffs are therefore entitled to a fee award for hours claimed expended in proceedings before this Court and the Court of Appeals.

Further, under the EAJA, "a fee award presumptively encompasses all aspects of the civil action," *Commissioner, I.N.S., supra,* and the Supreme Court has interpreted "civil action" to include administrative proceedings on remand which are necessary to the ultimate vindication of the claimant's rights. *See Sullivan v. Hudson,* — U.S. —, 109 S.Ct. 2248, 2257, 104 L.Ed.2d 941 (1989) ("[A]dministrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award.").

The proceedings on remand in this case were necessary to the ultimate vindication of Plaintiff's position: it was not until the individualized hearings were conducted that Plaintiffs were able to establish conclusively that the duress defense applied. The Court will therefore award fees for time connected with administrative proceedings on remand in addition to those awarded for time spent before this Court and the Court of Appeals.

The Court must conclude, however, that it cannot award a fee for the administrative proceedings conducted prior to the filing of this suit, because those proceedings were not an "adversary adjudication" governed by 5 U.S.C. § 554. *See* 28 U.S.C. § 2412(d)(3) and 5 U.S.C. § 504(b)(1)(C) (defining "adversary adjudication" as "an adjudication under section 554 of [Title 5]"). The statutory scheme underlying the imposition of civil immigration fines under 8 U.S.C. § 1323 does not specifically set out the administrative proceedings to be followed, and the procedures set forth in 8 C.F.R. Part 280 make clear that those proceedings are not conducted under the more stringent requirements of § 554. *See St. Louis Fuel and Supply Co., Inc. v. F.E.R.C.,* 890 F.2d 446, 449 (D.C.Cir.1989) ("The section's short list [of procedural requirements] provides something less than APA section 554 mandates."); *cf. Clarke v. Immigration and Naturalization Service,* 904 F.2d 172 (3rd Cir.1990) (EAJA does not apply to deportation proceedings before the INS).

Having reviewed the affidavit of Plaintiff's attorney, and discounting the hours spent during the initial administrative proceedings, the Court finds that 192.2 hours is the appropriate number of hours reasonably expended.

## CONCLUSION

It is hereby ORDERED and ADJUDGED that Plaintiffs be awarded the amount of $19,604.40 against Defendant, to be paid forthwith to Alfred Frigola as compensation for 192.2 hours expended during the course of the litigation.

DONE and ORDERED.